# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| Terry Wayne DUCKWORTH, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 5:08-CV-223 (MTT) |
| ALLIANZ LIFE INSURANCE COMPANY OF AMERICA, *et al.*, | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. 33) and the Plaintiff's Motion for Summary Judgment (Doc. 35). The parties urge the Court to adopt their respective factual and legal interpretations of a disability insurance policy. Both motions are **DENIED**.

### I.   FACTUAL BACKGROUND

Plaintiff Terry Wayne Duckworth began work for the Southeastern Pennsylvania Transportation Authority ("SEPTA") on August 8, 1983. The Plaintiff stopped working on or about September 9, 1996 due to multiple medical problems. The Defendants contend that the Plaintiff's salary was $45,708 at the time of his disability, but the Plaintiff argues he was making $47,086.

As a SEPTA employee, the Plaintiff was enrolled in a group long-term disability insurance policy as part of SEPTA's employee benefits plan.[1] Defendant North American Benefits Company ("NABCO") administered the policy on behalf of Defendant Allianz Life Insurance Company of North America.

---

[1] Because SEPTA is a governmental entity, its plan is not subject to ERISA. 29 U.S.C. § 1003(b)(1).

The insurance policy provides that the Plaintiff would receive monthly disability benefits equal to 60 percent of his "Basic Monthly Earnings," less other income benefits ("OIB"). The Policy defines "other income benefits" as "[t]he amount of disability or retirement benefits under the United States Social Security Act … or any similar plan or act."[2] This case primarily involves the allowable offset, if any, for benefits received by the Plaintiff from the Railroad Retirement Board. The policy further provides that in the event the insured is overpaid, the insured must reimburse Allianz within 60 days. If the insured fails to reimburse Allianz, the policy allows Allianz to reduce future benefits until it has been reimbursed.

Because the Plaintiff received salary continuance and sick leave pay from SEPTA, the Plaintiff did not become eligible for benefits from Allianz until he exhausted these benefits. In April 1998, the Plaintiff reported to NABCO that he no longer was being paid by SEPTA. Consequently, Allianz began paying the Plaintiff $2,285.40 a month, the full benefit for a salary of $45,708.

At some point, the Plaintiff applied for a "disability annuity" with the Railroad Retirement Board and on March 30, 2001, a hearing officer with the Board found in the Plaintiff's favor. According to the hearing officer's decision, the issues before the hearing officer were "whether the appellant is entitled to a disability annuity under Section 2(a)(1)(v) of the Railroad Retirement Act and whether he is entitled to a period of disability under Section 216(i) of the Social Security Act." The hearing officer found that the Plaintiff had been disabled since September 10, 1996 and ruled that he was entitled to a Railroad Retirement Act annuity effective September 1, 1998. He further

---

[2] The policy allows Allianz to reduce benefits for other types of benefits, but Allianz does not contend that these offset provisions are applicable.

found that the Plaintiff was entitled "to a period of disability under Section 216(i) of the Social Security Act from September 1, 1996, and will be eligible for early Medicare coverage at the end of the required waiting period, on September 1, 2000."

In May 2001, the Board sent the Plaintiff a "Railroad Retirement Award Notice" informing him of details regarding his disability annuity. Effective September 1, 1998, he was entitled to "Tier I" benefits in the amount of $1,432 and "Tier II" benefits in the amount of $481.75 for a total payment of $1,913.75. According to the notice, Tier I benefits were computed pursuant to a "Social Security formula." The record establishes that Tier I typically consists of both Social Security equivalent benefits, called SSEB, and non-Social Security equivalent benefits, called NSSEB. Tier II benefits, the May 2001 notice states, are computed pursuant to a "Railroad Retirement formula" and are described as benefits similar to those provided by private pension funds. Both Tier I and Tier II benefits increased effective December 1, 1998 and annually thereafter.

Presumably, although the record is far from clear on this point, the Railroad Retirement Board paid the Plaintiff a lump sum for past due benefits and then commenced monthly payments.

According to the Defendants, the Plaintiff informed NABCO by telephone in July 2001 that he was receiving railroad retirement benefits in the monthly amount of $1,855.91 "effective 7/1/01."[3] Apparently, the Plaintiff made no mention of lump sum

---

[3] The Plaintiff explains this as follows: "Given that his RRA payments were reduced by $105.00 for taxes and $50 for supplemental medical insurance premiums, effective July 2001, Mr. Duckworth received his first monthly payment of $1,855.91 ($2,030.91 - $105.00)." Of course, this calculation makes no sense, but it does illustrate the care, or lack of care, by the parties with regard to the marshaling of facts. Actually, the Railroad Retirement Board *withheld* $125 for federal income taxes and $50 for supplemental medical insurance premiums. No party attempts to explain why these amounts would or would not be included in the offsets.

payment(s) and it seems it did not occur to the Defendants to ask about payments for periods of disability before July 1, 2001.[4]

Whether because the Plaintiff did not disclose that his benefits were payable retroactive to at least as early as September 1, 1998 or because the Defendants simply overlooked this rather significant fact, NABCO only applied an offset prospectively. In any event, and for whatever reason, the Defendants allegedly accepted the Plaintiff's alleged representation that his monthly benefits were $1,855.91 and became effective July 1, 2001. Based on nothing more than that, NABCO reduced the Plaintiff's monthly benefit to $429.49 ($2,285.40 minus $1,855.91).

As it turns out, and although difficult to discern from the record, there was a third component of the Plaintiff's monthly annuity payment. Although railroad retirement benefits are intended, to a significant degree, to be comparable to Social Security disability benefits, the Railroad Retirement Act does not provide for the payment of benefits to or on behalf children of disabled employees. Minor children of those collecting Social Security disability benefits, however, are entitled to benefits. To address this, the Railroad Retirement Act provides that a disabled employee will receive no less than what he and his family would have received under the Social Security Act if he had been eligible for Social Security benefits. The portion of the monthly benefit payable to or on behalf of children is called the "family share." The family share is fifty percent of the employee's Tier I benefit. Thus, for example, when the Plaintiff became eligible for a monthly Tier I benefit in the amount of $1,432 effective September 1, 1998, the family share benefit would have been $716.

---

[4] The record does not reflect whether the Plaintiff sent the award notice to the Defendants.

Surprisingly, the parties essentially ignore this significant component of the Plaintiff's annuity. The Defendants never mention it and the Plaintiff only mentions it in passing. The record does not reflect when the Plaintiff or his family began receiving the family share benefit.

The Defendants claim that they first became aware of the full circumstances of the Plaintiff's annuity in April 2005 when they received a letter directly from the Railroad Retirement Board. The Defendants represent, repeatedly, that the Board "notified NABCO that it actually awarded Plaintiff a monthly retirement benefit of $2,595 (not $1,855.91), and that the award became effective September 1, 1998 (not July 1, 2001)." This is not what the letter says. Rather, it states that the Plaintiff's $2,595 monthly benefit became effective in December 2004. The letter does state that the initial award was dated September 1, 1998.[5] Apparently based on the baseless assumption that the Plaintiff's benefits had been level since September 1, 1998, the Defendants somehow calculated a monthly offset of $2,215.67 and simply applied that in a straight line method to determine that it had overpaid the Plaintiff $92,709.19. If there is anything certain in this case, it is that the Defendants have incorrectly calculated the amount to be offset. Even assuming that all three components of the Plaintiff's annuity are subject to offset, the monthly amount of the annuity changed on an annual basis. Clearly, to calculate the offsets, the Defendants would have to use figures grounded in reality.

## II.    DISCUSSION

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Fed.

---

[5] Of course, the award was issued in 2001, retroactive to September 1, 1998.

R. Civ. P. 56. "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). The burden rests with the moving party to prove that no genuine issue of material facts exists. *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224. The district court must "view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor." *Id.*

The record is not sufficient to allow the Court to enter summary judgment in favor of or against any party. The Defendants, relying primarily on ERISA decisions and without once referring to Georgia rules of construction governing the interpretation of insurance contracts, do not address the three components of the Plaintiff's annuity. Furthermore, as noted, the Defendants' calculation of the offset is clearly incorrect. The Plaintiff addresses Tier I and Tier II benefits in some detail but offers no substantive discussion of the family share benefit.[6]

In sum, and notwithstanding that, ultimately, the material facts likely will not be in dispute, summary judgment is not now appropriate. Because neither party requested a jury trial, this matter has been set for non-jury trial.

---

[6] Based on the record, as it currently stands, it seems likely, but not definitively, that Tier I SSEB can be offset and Tier I NSSEB and Tier II benefits cannot be offset. Apparently, however, the Plaintiff never received Tier I NSSEB benefits.

### III. CONCLUSION

For the foregoing reasons, the Defendants' Motion is **DENIED** and the Plaintiff's Motion is **DENIED**.

**SO ORDERED**, this the 4th day of February, 2011.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT